UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

ANTHONY SCOTT CLEVENGER,

        **Plaintiff,**

    v.                          **Civil Action 2:19-cv-4512**
                                       **Magistrate Judge Chelsey M. Vascura**

COMMISSIONER OF SOCIAL
SECURITY,

        **Defendant.**

### OPINION AND ORDER

Plaintiff, Anthony Scott Clevenger ("Plaintiff"), brings this action under 42 U.S.C.

§ 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner")

denying his application for a period of disability, disability insurance benefits, and supplemental

security income.  This matter is before the Court for review of Plaintiff's Statement of Errors

(ECF No. 11), the Commissioner's Memorandum in Opposition (ECF No. 12), Plaintiff's Reply

(ECF No. 13), and the administrative record (ECF No. 10).  For the reasons that follow, the

Court **OVERRULES** Plaintiff's Statement of Errors and **AFFIRMS** the Commissioner's non-

disability finding.

### I.      PROCEDURAL HISTORY

Plaintiff protectively filed his application under Title II of the Social Security Act for a

period of disability and disability insurance benefits on September 20, 2016.  (R. at 61.)  He filed

an application under Title XVI for supplemental security income that same day.  (*Id*. at 62.)  In

both applications, Plaintiff alleged a disability onset of March 20, 2015.  (*Id*. at 61–62.)

Plaintiff's applications were denied initially on December 15, 2016, and upon reconsideration on March 3, 2017. (*Id*. at 63–90, 93–122.) Plaintiff sought a hearing before an administrative law judge. (*Id*. at 143.) Administrative Law Judge Linda Thomasson (the "ALJ") held a hearing on July 27, 2018, at which Plaintiff, represented by counsel, appeared and testified via telephone. (*Id*. at 35.) Vocational expert Lloyd Tommila (the "VE") also appeared and testified via telephone at the hearing. (*Id*.) On September 26, 2018, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (*Id.* at 13–32.) On August 14, 2019, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (*Id*. at 1–5.) Plaintiff then timely commenced the instant action. (ECF No. 1.)

Plaintiff advances four contentions of error. (Pl.'s Statement of Errors, ECF No. 11; Pl.'s Reply, ECF No. 13.) Namely, Plaintiff asserts that remand is required because: (1) the ALJ failed to properly evaluate the opinion of medical consultative examiner, Collin Blattner, D.O.; (2) the ALJ erred in declining to include coronary artery disease and headaches as severe impairments; (3) the ALJ erred in declining to include a cane in Plaintiff's residual functional capacity ("RFC"); and, finally, (4) the ALJ failed to meet her burden under step five of the sequential evaluation process by relying on testimony that conflicts with the Dictionary of Occupational Titles ("DOT").

## II.     THE ADMINISTRATIVE DECISION

On September 26, 2018, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 13–32.) The ALJ first found that Plaintiff meets the insured status requirements through December 31, 2020. (*Id*. at 18.) At step one of

the sequential evaluation process,[1] the ALJ found that Plaintiff had not engaged in substantially

gainful activity since March 20, 2015, the alleged onset date of Plaintiff's disability. (*Id.*) At

step two, the ALJ found that Plaintiff had the following severe impairments: right hip disorder;

depression; and intellectual disorder. (*Id.* at 19.) The ALJ further found that Plaintiff suffers

from the following non-severe impairments, *inter alia*: headaches, coronary artery disease, and

hypertension. (*Id.*) At step three, the ALJ found that Plaintiff did not have an impairment or

combination of impairments that met or medically equaled one of the listed impairments

described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*) At step four, the ALJ set forth

Plaintiff's RFC as follows:

> After careful consideration of the entire record, I find that the claimant has the
> residual functional capacity to perform light work as defined in 20 C.F.R.
> 404.1567(b) and 416.967(b) except: He can stand/walk for two hours total in an
> eight-hour workday. He can never climb ladders/ropes/scaffolds or climb
> ramps/stairs. He can occasionally kneel, crouch, and crawl. He can have
> occasional exposure to hazards, such as moving mechanical parts and unprotected
> heights. He is limited to work with a reasoning level 2 or less. He is limited to

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step
sequential evaluation of the evidence. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).
Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*,
475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and
answers five questions:

1.   Is the claimant engaged in substantial gainful activity?
2.   Does the claimant suffer from one or more severe impairments?
3.   Do the claimant's severe impairments, alone or in combination, meet or equal the
     criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20
     C.F.R. Subpart P, Appendix 1?
4.   Considering the claimant's residual functional capacity, can the claimant perform his
     or her past relevant work?
5.   Considering the claimant's age, education, past work experience, and residual
     functional capacity, can the claimant perform other work available in the national
     economy?

*See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264
(6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

performing simple routine and repetitive tasks. He can make simple work related decision[s].

(*Id.* at 21–22.) In assessing Plaintiff's RFC, the ALJ considered Plaintiff's hearing testimony, function reports submitted by Plaintiff and a family member, medical treatment records, and several medical opinions. (*Id*. at 22–26.) The medical opinion evidence included the opinions of State agency medical and psychological consultants who reviewed Plaintiff's claim file initially and on reconsideration, the report and opinion of psychological consultative examiner, David Gostnell Ph.D., and the report and opinion of medical consultative examiner, Collin Blattner, D.O. (*Id*. at 23–26.)

At step five of the sequential evaluation process, the ALJ found that Plaintiff is unable to perform his past relevant work as a livestock farm worker. (*Id.* at 26.) Relying on the VE's testimony, the ALJ found that jobs exist in significant numbers in the national economy for an individual with Plaintiff's age, education, work experience, and RFC. (*Id*. at 27–28.) Examples include Parking Lot Attendant, Production Assembler, and Marker II. (*Id*. at 28.) The ALJ further found that Plaintiff is capable of making a successful adjustment to such employment. (*Id*.) The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act. (*Id.*)

### III.     RELEVANT EVIDENCE OF RECORD

Discussion of the evidence will be limited to those portions bearing on Plaintiff's contentions of error.

#### A. Treatment Records

The evidence includes a very small number of records reflecting Plaintiff's medical treatment, dating only as far back as late June 2016.

On June 28, 2016, Plaintiff presented to the emergency department at Beavercreek Medical Center for acute chest pain. (*Id*. at 317–37.) Records documenting that visit reflect that Plaintiff had not seen a physician in over eight years. (*Id*. at 319.) Although his chest pain subsided with medication, Plaintiff was admitted for additional testing "[d]ue to unknown amount of risk factors and lack of previous stress testing." (*Id*. at 323.) While at Beavercreek Medical Center, Plaintiff underwent several physical examinations. Each was "unremarkable" save for the chest pain that prompted his visit. (*See, e.g., id*. at 323.) Further testing and imaging performed by Beavercreek Medical Center revealed grade II diastolic dysfunction and palpitations. (*Id*. at 345, 351.) Of note, the treatment records include no mention of abnormal gait, hip pain, or use of an assistive device, such as a cane.

On October 4, 2016, Plaintiff visited Rose City Urgent Care and Family Practice to establish as a new patient. (*Id*. at 356.) Records from that visit reflect a history of migraine headaches and hip surgery. (*Id*. at 357.) Plaintiff reported chest pain two to three times daily, and regular migraines following a 2008 injury. (*Id*.) The physical exam results were normal, with notes that Plaintiff was "ambulating normally" and had a "normal gait." (*Id*. at 358.) Plaintiff was prescribed prescription-strength ibuprofen for his headaches and instructed to take the pills on an as-needed basis. (*Id*.)

On November 23, 2016, Plaintiff was seen at Providence Heart Clinic for recurring chest pain. (*Id*. at 391.) Treatment records reflect that the chest pain subsided with medication. (*Id*.) An echocardiogram showed normal results. (*Id*. at 395.) The physical exam of plaintiff was unremarkable, and Plaintiff has a "[n]ormal gait without limitation." (*Id*. at 394.)

Shortly thereafter, on November 27, 2016, Plaintiff visited Providence Portland Medical Center for an X-ray of his hip. (*Id*. at 381.) Plaintiff reported worsening pain in the hip joint.

(*Id.*) However, the X-ray revealed "[n]o acute abnormality in the right hip. Hardware appears to be intact without evidence for loosening or loss of fixation." (*Id.*)

On February 14, 2017, Plaintiff returned to Rose City Urgent Care and Family Practice to request a cane for balance. (*Id.* at 408–10.) Plaintiff reported that his "hip [would] give way with walking especially going up stairs." (*Id.* at 409.) The provider prescribed a cane "for ambulation," along with an X-ray of the hip[2] and physical therapy. (*Id.* at 410.) Notably, the treatment records document that Plaintiff was "ambulating normally" and had a "normal gait" at the appointment. (*Id.*)

The following day, on February 15, 2017, Plaintiff again visited Providence Heart Clinic for continued chest pain. (*Id.* at 399–406.) A coronary angiogram was ordered—however, the results of any such angiogram are not included in the record.

### B. Medical Consultative Examiner, Collin Blattner, D.O.

On November 27, 2016, Plaintiff was examined by medical consultative examiner, Collin Blattner, D.O. (*Id.* at 373–78.) Dr. Blattner also reviewed certain of Plaintiff's treatment records, including from his visit to the Beavercreek Medical Center emergency department, and from his October 4, 2016 visit to Rose City Urgent Care and Family Practice. (*Id.* at 373.) Dr. Blattner summarized Plaintiff's subjective complaints, and their reported origins, as follows:

> **HISTORY OF PRESENT ILLNESS:** The claimant states that on June 12, 2008, he was working on a horse farm at the University of Kentucky in Lexington and at that time, he got pulled down by a horse and he was subsequently smashed by the horse on his right hip and his head. He states that after the accident, he could not move so he was transported to the hospital at the University of Kentucky. He had x-rays at that time and they did emergency surgery on his right hip. He states that he was in the hospital for three days. He subsequently completed a course of physical therapy and after eight months, he was released back to work on light duty. He did light duty but Tylenol did not cut the pain down for him. He stated he has not worked since that time because the pain became too bad. He also states that the migraines started after the accident with the horse. The migraines make him want

---

[2] It is unclear whether the provider was aware of the November 2016 hip x-ray.

6

to 'throw up.'  He does not see anyone for the headaches.  He also has a history of [coronary artery disease] and he is currently taking aspirin for this.  He states he gets short of breath when he walks more than 1.5 blocks.  He also states that when he walks he feels like his right hip sometimes buckles. . . .

. . .

> **REVIEW OF SYSTEMS:**  Positive for right hip pain, migraines, and shortness of breath with exertion.  Denies chest pain, shortness of breath at rest, fevers, chills, nausea, vomiting, diarrhea and constipation.  Negative for depression, anxiety or change in sleep pattern at this time.  He denies any abdominal pain at this time.

(*Id*. at 373–74.)  He noted that Plaintiff reported being capable of several activities of daily living:

> **ACTIVITIES OF DAILY LIVING:**  The claimant wakes up to 7:00 am.  He takes his medication.  He cleans the house and he tries to walk.  He typically likes to walk to the store or he hangs out with his cousin who typically drives.  He does not drive at all at this time.  He is able to use a phone without problems.  Hobbies include sports, horses, playing games on his phone.  Per the physical evaluation questionnaire, he is capable of bathing, shaving and dressing and using the toilet.  He states that dressing does cause him to have a harder time because of the hip pain.  He is capable of eating and he is capable of preparing sandwiches.  He is able to complete the dishes and load and unload the dishwasher.  He is also capable of watching TV.

(*Id*. at 374.)  Dr. Blattner summarized his physical examination of Plaintiff, in relevant part, as follows:

> GENERAL APPEARANCE AND OBSERVATIONS:  The claimant is a 50-year-old male in no acute distress.  He is emotionally stable.  He is not disheveled; grooming and hygiene are intact and appropriate to the setting.  He is able to transfer from the chair to the examination table.  He sits comfortably and is able to take his shoes off without difficulty.  He is able to walk to the examination room without difficulty but it takes him greater than 30 seconds to do so.  There is no evidence of poor effort or inconsistencies.

> . . .

> COORDINATION/STATION/GAIT:  Antalgic gait, unable to do toe/heel walk, tandem walking.  The claimant is capable of squatting to 45 degrees but this causes significant pain.  . . .

> ASSISTIVE DEVICE:  None used.

> . . .

7

> GENERAL FINDINGS: Right hip crepitus overlying the greater trochanter, pain to palpation of the joint. No other paravertebral muscle spasms, tenderness, effusions, deformities or trigger points were elicited along the spine.
>
> MOTOR STRENGTH/MUSCLE BULK AND TONE: 5/5 in the upper extremities. 3+/5 at the right hip flexor and extensor. 4/5 at the right knee flexors and extensors. 5/5 at the left lower extremity.

(*Id*. at 374–77.)

Based on his examination and review, Dr. Blattner opined that Plaintiff's physical abilities were limited in the following ways: he could stand/walk for a maximum of two hours; he could lift/carry/push/pull 20 pounds occasionally and 10 pounds frequently; and he could never climb steps, stairs, ladders, scaffolds, or ropes. (*Id*. at 377.) Dr. Blattner attributed each limitation to the pain, decreased strength, and decreased range of motion in Plaintiff's right hip. (*Id*.) Finally, Dr. Blattner noted that Plaintiff did not use an assistive device. (*Id*.)

### C. Plaintiff's Function Report

Plaintiff completed a Function Report dated October 8, 2016. Therein, Plaintiff recounted the horse accident that resulted in his hip injury and marked the onset of his headaches. (*Id*. at 258.) He noted being able to perform chores, including sweeping, mopping, and cleaning the bathroom, kitchen, and living areas. (*Id*. at 261.) He would complete these tasks roughly twice each week, "till [his] hip and head hurts." (*Id*.) Plaintiff reported that bending and walking would hurt his head, and various work-related activities hurt his hip. (*Id*. at 263.) He further reported being able to walk four blocks before needing to stop and rest. (*Id*.) Finally, Plaintiff indicated that he uses a cane "if my hip hurts and if I need to walk a while." (*Id*. at 264.)

### D. Plaintiff's Hearing Testimony

Plaintiff testified before the ALJ at the July 27, 2018 hearing. (*Id*. at 40–45.) Among other topics, Plaintiff offered testimony related to his migraines, heart problems, and use of a cane. As to his migraines, Plaintiff told the ALJ that his headaches caused him to quit his last

8

two jobs, in 2015, after only two weeks in each position. (*Id*. at 41.) He further testified that he continued to experience the headaches two to three times per week. (*Id*. at 43.) Plaintiff testified that he treats the headaches with ibuprofen and rest. (*Id*. at 43–44.) Upon inquiry from the ALJ, Plaintiff noted that he had difficulty seeking a prescription for stronger therapy because he was uninsured for a period of time. (*Id*. at 44.) As to his chest pain, Plaintiff testified that he ceased taking medication six months prior to the hearing, on the advice of his healthcare provider. (*Id*. at 51–52.) Plaintiff referred to his chest pain in the past tense. (*Id*. at 52.) He also noted that he was breathing better after successfully quitting smoking. (*Id*.) Plaintiff did not indicate that chest pain was a continuing issue or caused him any difficulty as of the date of the hearing. Finally, Plaintiff told the ALJ that he had been prescribed a cane six months prior to the hearing and used it all the time. (*Id*. at 45.)

### E. VE's Hearing Testimony

The VE also testified before the ALJ at the July 27, 2018 hearing. (*Id*. at 56–57.) Among other topics, the VE testified about the availability of jobs for a person with certain hypothetical characteristics and limitations. A portion of that testimony is as follows:

> [ALJ]: All right. For the next hypothetical, please assume all the same limitations, but even though it's still at the light level, the individual is limited to standing and walking a total of two hours. All of the postural limits are the same, except it's a little bit more restrictive. The person should never climb ramps and stairs. So, they should never climb ladders, ropes or scaffold. Never climb ramps or stairs, but they can occasionally kneel, crouch and crawl. Environmental and mental limits are the same as the first hypothetical. Would there be any work that this hypothetical individual could do?

> [VE]: Your Honor, Parking Lot Attendant would remain, with being reduced. The numbers would be reduced by half. The other two jobs would not be viable with that hypothetical. Instead, there is a Production Assembler. 706.687-010. Light level, with an SVP of two. There's 58,000 jobs estimated in the national economy. That number would be halved for the standing restrictions. And Marker II. 920.687-126. Light level, with an SVP of two. 27,000 jobs estimated in the national economy. That number would also be halved.

9

> [ALJ]:  So, with respect to the standing and walking limitations that I've provided and also the reduced job numbers that you've given, what do you rely on for your testimony on those issues?
>
> [VE]:  Your Honor, that testimony is based on my education, experience and training as a vocational rehabilitation counselor.
>
> [ALJ]:  Other than that, has your testimony been consistent with the Dictionary of Occupational Titles?
>
> [VE]:  It has, Your Honor.

(*Id.* at 56–57.)  On cross-examination, Plaintiff's counsel asked the VE to clarify his opinion:

> [Counsel]:  So, you're saying half the jobs in the country allow for two hours of standing at the Marker II and the other half would require was it six of eight standing or –
>
> [VE]:  Yes.  It's a matter of whether or not the employer has – if it's a bench work or not.  Whether or not they can – they're equipped to let people sit down.

(*Id.* at 58.)

## IV.    STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the

Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

## V.     ANALYSIS

Plaintiff now contends that remand is required for the following reasons: (1) the ALJ failed to properly evaluate the opinion evidence of medical consultative examiner, Collin Blattner, D.O.; (2) the ALJ erred in declining to list headaches and coronary artery disease as severe impairments; (3) the ALJ failed to include a cane in Plaintiff's RFC; and (4) the ALJ failed to meet her burden at step five of the sequential evaluation process by relying on VE testimony that was inconsistent with the DOT. For the reasons discussed below, the Court finds that each contention of error is without merit.

### A.     The ALJ properly evaluated Dr. Blattner's opinion.

The first issue Plaintiff raises is that the ALJ failed to properly evaluate the opinion of medical consultative examiner, Colin Blattner, D.O. (Pl.'s Statement of Errors at 10, ECF No. 11; Pl.'s Reply at 2, ECF No. 13.) The ALJ must consider all medical opinions that she receives in evaluating a claimant's case. 20 C.F.R. §§ 404.1527(c), 416.927(c). When reviewing a

11

medical opinion, the ALJ will consider the following factors in deciding the weight to afford it: (i) examining relationship; (ii) treatment relationship; (iii) supportability; (iv) consistency; (v) specialization; and (vi) other relevant factors bearing on the reliability of the opinion.  (*Id*.) However, as a non-treating practitioner, a consultative examiner's opinion is not entitled to any particular deference.  *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

Dr. Blattner was engaged to complete a one-time, in-person examination of Plaintiff, in addition to a brief review of certain of Plaintiff's medical treatment records.  Dr. Blattner's report included: a detailed summary of Plaintiff's subjective complaints and medical history, as represented to him; the results of his thorough physical examination; diagnoses; and an opinion that Plaintiff's ability to engage in work-related activities was limited to standing/walking no more than two hours in an eight-hour workday, lifting/carrying 20 pounds occasionally and 10 pounds frequently, and never climbing stairs, ramps, ladders, ropes, or scaffolds.  The ALJ considered Dr. Blattner's opinion, and adopted certain portions of it, for the following reasons:

> I adopt in part Dr. Blattner's opinion because he is a medical doctor, who examined the claimant and assessed his limitations.  Weight is given to the doctor's exertional, climbing, and limits on stooping because they are consistent with the examination findings, the claimant's wide variety of daily activities, and the medical evidence of record.  However, little weight is given to the doctor's other opinions regarding the claimant's postural activities and environmental restrictions because the[y] underestimate the claimant['s] limitations.  I have accounted for these limitations in the residual functional capacity.

(R. at 24.)  In other words, the ALJ found that Plaintiff was *more* limited than Dr. Blattner opined in the areas of postural activities and environmental restrictions.

The ALJ also reviewed and considered the medical opinions of psychological consultative examiner, David Gostnell, Ph.D., and the State agency medical and psychological consultants who reviewed Plaintiff's claim file initially and on reconsideration.  In formulating

12

the RFC, the ALJ gave weight to each opinion in accordance with her review of the six factors

identified in the regulations. As to Dr. Gostnell's opinion, the ALJ explained as follows:

> I adopt in part the opinions of Dr. Gostnell because he is a psychologist, who examined the claimant and assessed his limitations. The doctor's opinion claimant is capable of managing funds is consistent with the examination findings and the record as a whole. However, I give little weight to his opinions that the claimant's occupational choices are substantially restricted due to intellectual limits for several reasons. First, this is inconsistent with the claimant's ability to maintain long-term employment. Second, this opinion is vague and does not contain specific vocational limitations.

(*Id*. at 25.) As to the State agency medical consultants' opinions, the ALJ stated:

> I adopt in part the opinions of [the State agency medical consultants] because they are medical doctors, who had the benefit of reviewing medical records from several treating sources, and have a longitudinal picture of the claimant's health. I give weight to the doctor's [*sic*] opinions regarding the claimant's ability to lift/carry limitations and postural activity restrictions with the exception of climbing. However, the doctors underestimate the claimant's standing/walking limits, and environmental and climbing restrictions. I have accounted for these additional limitations/restrictions in the residual functional capacity.

(*Id*.) Again, the ALJ determined that Plaintiff was *more* limited than the consultants had opined.

Finally, as to the State agency psychological consultant, the ALJ explained:

> I give great weight to [the State agency psychological consultant's] opinion because he is a psychologist, who had the benefit of reviewing records from several treating sources, and have a longitudinal picture of the claimant's mental health. The doctors are [*sic*] also psychological experts and have experience in the vocational issues involved in the disability program under the Social Security Act. Finally, the medical record as a whole supports his opinion.

(*Id* at 26.)

The Court finds no error in the consideration and discussion of the medical opinion

evidence. The ALJ must consider and evaluate all available medical opinion evidence in the

record. 20 C.F.R. §§ 404.1527(b)-(c), 416.927(b)-(c). However, the ALJ is not bound by any

such opinion, and herself holds final responsibility for assessing the RFC. 20 C.F.R. §§

404.1546(c), 416.946(c).  In this case, the ALJ considered each medical opinion and assigned weight according to the appropriate factors, and in light of her review of the record as a whole.

Although Plaintiff argues that the ALJ "failed to accord proper weight to the findings of Dr. Blattner," (Pl.'s Statement of Errors at 11, ECF No. 11) he does not make clear whether he would have preferred that the ALJ assign more or less weight to Dr. Blattner's opinion.  On the one hand, Plaintiff argues that Dr. Blattner should have been afforded more weight than the reviewing physicians, on account of having examined Plaintiff.  (*Id*. citing *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 165, 375 (6th Cir. 2013).)  On the other, Plaintiff seems to argue that the ALJ afforded *too much* weight to Dr. Blattner's opinion, and ignored portions of his exam findings that would have supported additional limitations.  (*Id*. at 10.)  Plaintiff's argument therefore fails.

Plaintiff's alternative argument is even less clear and is, similarly, unavailing.  Plaintiff seems to argue that, because the ALJ accepted portions of each medical opinion in developing the RFC, she failed to "build an accurate and logical bridge" between the evidence and the limitations she assessed.  (Pl.'s Statement of Errors at 11, ECF No. 11; Pl.s' Reply at 2, ECF No. 13.)  The Court simply disagrees.  As noted above, it is the ALJ's exclusive responsibility to assess a claimant's RFC.  20 C.F.R. §§ 404.1546(c), 416.946(c).  The ALJ was not obligated to adopt any portion of the medical opinion evidence as the RFC, and was certainly not obligated to adopt a single opinion wholesale.  As such, Plaintiff's first contention of error is **OVERRULED**.

## B.    The ALJ did not err in finding Plaintiff's migraine headaches and coronary artery disease to be non-severe impairments.

Plaintiff' next contends that the ALJ erred in failing to find that Plaintiff's coronary artery disease and migraine headaches constituted severe impairments.  (Pl.'s Statement of Specific Errors at 12, ECF No. 11.)  This contention is without merit.

At step two of the sequential evaluation process, Plaintiff bears the burden of proving the existence of a severe, medically determinable impairment that meets the twelve-month durational requirement.  *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *Harley v. Comm'r of Soc. Sec.*, 485 F. App'x 802, 803 (6th Cir. 2012).  The United States Court of Appeals for the Sixth Circuit has construed a claimant's burden at step two as "a *de minimis* hurdle in the disability determination process."  *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988).  The inquiry is therefore "employed as an administrative convenience to screen out claims that are 'totally groundless' solely from a medical standpoint."  *Id*. at 863 (quoting *Farris v. Sec'y of Health & Hum. Servs.*, 773 F.2d 85, 90 n.1 (6th Cir. 1985)).  A severe impairment is defined as "any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities," 20 C.F.R. §§ 404.1520(c), 416.920(c), and which lasts or can be expected to last "for a continuous period of not less than 12 months," 20 C.F.R. §§ 404.1509, 416.909.

Where the ALJ determines that a claimant has a severe impairment at step two of the analysis, "the question of whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence."  *Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803 (6th Cir. 2003).  Instead, the pertinent inquiry is whether the ALJ considered the "limiting effects of all [claimant's] impairment(s), even those that are not severe, in determining [the claimant's] residual functional capacity."  20 C.F.R. §§ 404.1545(a)(2), (e); 20 C.F.R. §§ 416.945(a)(2), (e).  *See also Pompa*, 73 F. App'x at 803 (rejecting the plaintiff's argument that the ALJ erred by finding that a number of her impairments were not severe where the ALJ determined that plaintiff had at least one severe impairment and considered all of the plaintiff's impairments in

her RFC assessment); *Maziarz v. Sec'y of Health & Hum. Servs.*, 837 F.2d 240, 244 (6th Cir. 1987) (same).

Here, the ALJ determined that Plaintiff has one or more severe impairments, but found, *inter alia*, his migraines and coronary artery disease to be non-severe. (R. at 19.) She explained that "these alleged impairments, considered singly or together, have caused only transient and mild symptoms and limitations, are well controlled with treatment or are otherwise not adequately supported by the medical evidence in the record." (*Id*.)

The question now before the Court is whether the ALJ appropriately considered any limiting effects caused by these impairments in assessing Plaintiff's RFC. The Court concludes that she did. Specifically with respect to Plaintiff's migraine headaches and coronary artery disease, the ALJ found that "there is no evidence that this impairment causes any vocational limitations." (*Id*.) In support of such finding, the administrative decision reflects that the ALJ considered the (albeit, limited) objective medical evidence in the record as well as Plaintiff's subjective testimony and Function Report. (*Id*.) As to Plaintiff's headaches, the ALJ considered Dr. Blattner's affirmative diagnosis of migraine. (*Id*.) The ALJ also considered Plaintiff's testimony that the migraines occur regularly, but that he treats them with ibuprofen and rest. (*Id*.) And as to Plaintiff's coronary artery disease, the ALJ considered treatment records from Plaintiff's June 2016 visit to Beavercreek Medical Center, including normal echocardiogram results, and an unremarkable physical examination. (*Id*.) In addition, the ALJ noted that those treatment records show that Plaintiff's chest pain subsided with medication. (*Id*.) Plaintiff does not now propose or present evidence of any vocational limitations resulting from either his headaches or coronary artery disease that are not addressed in the ALJ's RFC. For those reasons, the Court cannot conclude that the ALJ erred in fulfilling her obligation to consider all of

16

Plaintiff's impairments in developing the RFC. Therefore, Plaintiff's second contention of error is **OVERRULED**.

### C. The ALJ's failure to discuss whether Plaintiff required a cane was harmless error.

Plaintiff further contends that the ALJ erred in failing to consider whether Plaintiff requires an assistive device to ambulate. (Pl.'s Statement of Errors at 15, ECF No. 11; Pl.'s Reply at 2–3, ECF No. 13.) Upon his request, Plaintiff was prescribed a cane on February 14, 2017. He cited imbalance and difficulty climbing stairs due to his hip. Although the cane was prescribed generally "for ambulation," treatment records from that visit reflect that Plaintiff was observed ambulating normally and with a normal gait. Plaintiff does not identify any other medical evidence in the record supporting his need to use a cane.

If a cane is not medically required, it cannot be considered a restriction or limitation on a claimant's ability to work. *Carreon v. Massanari,* 51 F. App'x 571, 575 (6th Cir. 2002). Social Security Ruling 96-9p instructs as follows:

> To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information).

SSR 96-9P, 1996 WL 374185, at *7 (July 2, 1996). "[W]here there is conflicting evidence concerning the need for a cane, 'it is the ALJ's task, and not the Court's, to resolve conflicts in the evidence.'" *Forester v. Comm'r of Soc. Sec.*, No. 2:16-CV-1156, 2017 WL 4769006, at *4 (S.D. Ohio Oct. 23, 2017) (quoting *Foreman v. Comm'r of Soc. Sec.*, No. 2:10-cv-1008, 2012 WL 1106257, at *4 (S.D. Ohio Mar. 31, 2012)).

In her decision, the ALJ made no mention of Plaintiff's possible required use of a cane, except to note that Dr. Blattner reported that Plaintiff did not use an assistive device, and opined that Plaintiff did require an assistive device. (*See* R. at 23–24.) Yet, even if the omission of any

17

cane-related discussion was an error, it was harmless error.  "It is an elemental principle of administrative law that agencies are bound to follow their own regulations."  *Wilson v. Comm'r of Soc. Sec*., 378 F.3d 541, 545 (6th Cir. 2004).  Generally, however, federal courts review decisions of administrative agencies for harmless error.  *Rabbers*, 582 F.3d at 654–55.  Accordingly, "an agency's violation of its procedural rules will not result in reversible error absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses."  *Connor v. United States Civil Serv. Comm'n,* 721 F.2d 1054, 1056 (6th Cir. 1983).

Even when canes are used pursuant to a prescription from a doctor, the use of a cane need not be incorporated into the RFC unless the Plaintiff can demonstrate it is medically required. *Krieger v. Comm'r of Soc. Sec.*, No. 2:18-CV-876, 2019 WL 1146356, at *5 (S.D. Ohio Mar. 13, 2019), *report and recommendation adopted*, (S.D. Ohio Aug. 22, 2019) (affirming ALJ's determination that a cane was not medically required despite prescription).  Here, although Plaintiff was prescribed a cane, the treatment records show that the prescription was written in response to Plaintiff's self-report of difficulty; not observed abnormalities in Plaintiff's ambulation or gait.  Plaintiff's self-report falls short of the "medical documentation establishing the need for a hand-held assistive device" required by SSR 96-9p.  Plaintiff's third contention of error is, therefore, **OVERRULED**.

**D.      The ALJ did not err in relying on the VE's testimony, even though it was inconsistent with the DOT.**

Plaintiff's final contention of error is that the ALJ failed to carry her burden at step five by relying on the VE's testimony, which was inconsistent with the DOT.  (Pl.'s Statement of Errors at 15–16, ECF No. 11; Pl.'s Reply at 3, ECF No. 13.)  This contention is likewise without merit.

When the ALJ determines, as she has here, that a claimant cannot perform his past relevant work, the burden shifts to the Commissioner to prove that the claimant has the capacity to perform other work. 20 C.F.R. § 404.1560(c)(2). To meet its burden, "the Commissioner must make a finding 'supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs.'" *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 238 (6th Cir. 2002) (quoting *Varley v. Sec'y of Health & Hum. Servs.*, 820 F.2d 777, 779 (6th Cir. 1987)). "[T]he testimony of a vocational expert identifying specific jobs available in the [ ] economy that an individual with the claimant's limitation could perform can constitute substantial evidence supporting an ALJ's finding at step [five] that the claimant can perform other work." *Wilson*, 378 F.3d at 549 (collecting cases).

Social Security Ruling 00-4p states that "[o]ccupational evidence provided by a VE [ ] generally should be consistent with the . . . DOT." SSR 00-4p, 2000 WL 1898704, at *2. The ruling further articulates an ALJ's obligation to (i) identify any conflicts between VE testimony and the DOT, (ii) elicit a reasonable explanation for any identified conflict, and (iii) explain in the decision how any identified conflict was resolved. In pertinent part, the ruling provides as follows:

> When there is an apparent unresolved conflict between VE [ ] evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE [ ] evidence to support a determination or decision about whether the claimant is disabled. . . .

> Neither the DOT nor the VE [ ] evidence automatically 'trumps' when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the VE [ ] is reasonable and provides a basis for relying on the VE [ ] testimony rather than on the DOT information.

> . . .

> When vocational evidence provided by a VE [ ] is not consistent with the information in the DOT, the adjudicator must resolve this conflict before relying on the VE [ ] evidence to support a determination or decision that the individual is

or is not disabled.  The adjudicator will explain in the [ ] decision how [ ] she resolved the conflict.  The adjudicator must explain the resolution of the conflict irrespective of how the conflict was identified.

SSR 00-04p at *2–4.  Where a conflict is apparent and the ALJ fails to resolve or explain the conflict, remand may be appropriate.  *Dawson v. Berryhill*, No. 1:17-CV-02090, 2018 WL 6681715, at *4 (N.D. Ohio Nov. 26, 2018), *report and recommendation adopted*, 2018 WL 6675306 (N.D. Ohio Dec. 19, 2018) (collecting cases).  However, the Sixth Circuit has held that neither the ALJ nor the VE are bound by the DOT in making disability determinations.  *Wright v. Massanari*, 321 F.3d 611, 616 (6th Cir. 2003).  *See also Conn v. Sec'y of Health & Human Servs.*, 51 F.3d 607, 610 (6th Cir. 1995).

At the hearing in this case, the ALJ posed a hypothetical question to the VE, inquiring whether there exist jobs in the national economy that an individual with Plaintiff's RFC, as assessed by the ALJ in the administrative decision, could perform.  The VE identified three examples from the DOT: Parking Lot Attendant (915.473-014)[3], with 36,000 jobs available nationally; Production Assembler (706.687-010), with 29,000 jobs available nationally; and Marker II (920.687-126), with 13,500 jobs available nationally.  The ALJ and the VE acknowledged that the two-hour stand/walk limitation was not wholly consistent with the definition of "light work."  Upon inquiry from both the VE and Plaintiff's counsel, the VE, based on his education and experience, opined that 50% of the jobs available within these three DOT titles have a benchwork option that could accommodate the two-hour stand/walk limitation.  In the administrative decision, the ALJ accepted the VE's testimony, explaining as follows:

Although the [VE's] testimony is inconsistent with the information contained in the [DOT], there is a reasonable explanation for the discrepancy.  The [VE] testified

---

[3] The Court notes that the correct listing number differs by one digit: 915.473-010.  Plaintiff does not argue that this error prejudiced him in any way.

that he relied on his professional experience for his opinion about standing/walking, and reduced the job numbers by 50 percent (reflected in the numbers noted above).

(R. at 28.)

Plaintiff now argues that the VE failed to offer a reasonable explanation for any departure from the DOT, as required by SSR 00-4p. (Pl.'s Statement of Errors at 15, ECF No. 11; Pl.'s Reply at 3, ECF No. 13.) Plaintiff's argument is unavailing. Any ambiguity as to the "reasonable explanation for the discrepancy" referenced in the ALJ's decision is quickly resolved by a review of the record. The hearing transcript clearly indicates that the VE explained, both to the ALJ and to Plaintiff's counsel, that it was his opinion that half of the available jobs in each of the three identified categories offered a benchwork option, which could accommodate the two-hour stand/walk limitation. The DOT does not identify whether, or the extent to which, listed jobs include a benchwork option. SSR 00-4p expressly provides that a reasonable explanation may lie when the VE's evidence includes "[i]nformation about a particular job's requirements . . . not listed in the DOT [which] may be available . . . from a VE's [ ] experience in job placement or career counseling." SSR 00-4p at *2. The ALJ was therefore well within his rights to accept the VE's explanation and opinion, even though it was not a mere recitation of the DOT. *See Conn*, 51 F.3d at 610.

Plaintiff further argues that the ALJ's explanation of how the discrepancy was resolved is inadequate. (Pl.'s Statement of Errors at 15, ECF No. 11.) The Court finds no error in the ALJ's explanation of her resolution of the discrepancy in the decision. The ALJ acknowledged the discrepancy between the VE's testimony and the DOT, and accepted the VE's opinion, in light of his education and experience, as to the portion of those identified jobs that could accommodate a two-hour stand/walk limitation. *See e.g.*, *Duong v. Comm'r of Soc. Sec.*, No. 1:15-cv-1206, 2016 WL 5423283 at *4 (W.D. Mich. Sept. 29, 2016) (finding no error where the

ALJ credited the VE's opinion, based on his education and experience, that a portion of certain light and medium jobs offer a sit-stand option that can accommodate a limitation to sedentary work).

The Court therefore finds that substantial evidence supports the ALJ's findings at step five of the sequential evaluation process.  Plaintiff's fourth contention of error is **OVERRULED**.

## VI.  DISPOSITION

In sum, from a review of the record as a whole, the Court concludes that substantial evidence supports the ALJ's decision denying benefits.  Accordingly, Plaintiff's Statement of Errors is **OVERRULED**, and the Commissioner's decision is **AFFIRMED**.


**IT IS SO ORDERED.**

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE